STATE OF VERMONT
SUPERIOR COURT – ENVIRONMENTAL DIVISION

{

**In re Bennington Wal-Mart**         {         Docket No. 158-10-11 Vtec
**Demolition/Construction Permit**     {

## Decision on Motion for Summary Judgment and Motion for Party Status

The District 8 Environmental Commission (the Commission) granted an Act 250 permit to BLS Bennington LC and Wal-Mart Real Estate Business Trust (Applicants) to demolish an existing Wal-Mart and construct a new Wal-Mart, associated parking, landscaping, and a stormwater system in the Town of Bennington, Vermont. Vermont Natural Resources Council (VNRC) and Citizens for Greater Bennington (CFGB) appeal the portion of the Commission's decision denying them party status under any of the Act 250 criteria. Currently pending before this Court is Applicants' motion to dismiss VNRC and CFGB for lack of standing, which this Court converted to a motion for summary judgment in a November 8, 2011 order. Also pending before this Court is VNRC and CFGB's motion for party status.

In this proceeding, Applicants are represented by Alan B. George, Esq. CFGB and VNRC are represented by Jamey Fidel, Esq. and Paul R. Brierre, Esq.[1] The Natural Resources Board Land Use Panel was invited to participate in a March 13, 2012 status conference on this matter but did not appear.

## Factual Background

For the sole purpose of putting the pending motions into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.	On January 12, 2009, Applicants filed an application for an Act 250 permit to demolish an existing 50,966-square-foot Wal-Mart and a 10,000-square-foot retail space located at 210 Northside Drive in the Town of Bennington, Vermont (the Town). Applicants proposed to

---

[1] Robert E. Woolmington, Esq. represents the Town. Catherine J. Gjessing, Esq. originally filed a notice of appearance on behalf of Vermont Agency of Natural Resources (ANR). On November 18, 2011, William H. Rice, Esq., entered his appearance as lead counsel for ANR, while Attorney Gjessing remained as co-counsel. At a status conference held before this Court on March 13, 2012, Attorney Rice indicated that he represents the Vermont Agency of Transportation. None of these parties have filed in support of or in opposition to the motions currently before us.

construct a new 112,126-square-foot Wal-Mart, a 10,000-square-foot retail store, associated parking, landscaping, and a storm water system.

2.     On February 4, 2009, VNRC and CFGB submitted petitions for party status to the Commission.  (VNRC and CFGB's Response to Motion to Dismiss, Ex. 1, filed Dec. 12, 2011.) The Commission held a prehearing conference on Applicants' application on February 9, 2009. VNRC and CFGB appeared at the conference and repeated their request for party status.

3.     On February 17, 2009, the Commission issued a Prehearing Conference Report and Order admitting VNRC and CFGB as "Friends of the Commission" and giving them until March 3, 2009 to supplement their petitions and "upgrade their party status."  (VNRC and CFGB's Response to Motion to Dismiss, Ex. 2, filed Dec. 12, 2011.)

4.     VNRC and CFGB then filed a supplemental petition for party status containing detailed affidavits from VNRC and CFGB members detailing their particularized interests.  (VNRC and CFGB's Response to Motion to Dismiss, Ex. 3, filed Dec. 12, 2011.)  In a second Prehearing Conference Report and Order dated March 12, 2009, the Commission again denied VNRC and CFGB's request for party status, but again permitted them to participate as "Friends of the Commission."  (VNRC and CFGB's Response to Motion to Dismiss, Ex. 4, filed Dec. 12, 2011.)

5.     On March 19, 2009, VNRC and CFGB filed a motion for interlocutory review with this Court, asking the Court to review the Commission's denial of party status.  (VNRC and CFGB's Response to Motion to Dismiss, Ex. 5, filed Dec. 12, 2011.)  In an order dated March 31, 2009, this Court denied VNRC and CFGB's motion, declining to review the Commission's denial of party status, but encouraging the Commission to give VNRC[2] the "full respect of a party, so that a repeat of the Commission proceedings is avoided."  (VNRC and CFGB's Response to Motion to Dismiss, Ex. 8, filed Dec. 12, 2011.)

6.     In response to this Court's order, the Commission issued another Prehearing Conference Report and Order on April 1, 2009 stating that VNRC and CFGB could, "as Friends of the Commission, . . . engage in full participation in this case, including the ability to present oral and written testimony, cross examine witnesses, file memoranda, and submit proposed findings."  (VNRC and CFGB's Response to Motion to Dismiss, Ex. 9, filed Dec. 12, 2011.)

7.     On April 2, 2009, VNRC and CFGB sent the Commission a letter indicating that they did not wish to participate as Friends of the Commission, a status which they viewed as "second-

---

[2]  The Court's order referred only to VNRC.  However, because both VNRC and CFGB filed the motion for interlocutory review, we treat the order as applying to both of them here.

class, non-party status." (VNRC and CFGB's Response to Motion to Dismiss, Ex. 10, filed Dec. 12, 2011.) VNRC and CFGB offered, however, to participate as preliminary parties with the understanding that the Commission would reevaluate their party status at the end of the proceeding in accordance with 10 V.S.A. § 6085(6).

8. The Commission did not alter its decision and continued to hold hearings without VNRC or CFGB's participation over the next two years. On September 23, 2011, the Commission issued an Act 250 land use permit for Applicants' proposed Wal-Mart expansion. In the same decision, citing their lack of participation, the Commission revoked VNRC and CFGB's "Friends of the Commission" status. (VNRC and CFGB's Response to Motion to Dismiss, Ex. 11, filed Dec. 12, 2011.)

9. VNRC and CFGB then timely appealed the Commission's decision to this Court. Applicants filed a motion to dismiss the appeal, contending that VNRC and CFGB lacked standing. On November 8, 2011, this Court converted Applicants' motion to dismiss into a motion for summary judgment pursuant to V.R.C.P. 12(b) (hereinafter referred to as motion for summary judgment). VNRC and CFGB filed a motion for party status on November 14, 2011.

10. On November 8, 2011, the Court received notice from the Natural Resources Board Land Use Panel indicating that it had decided not to intervene in this matter but was willing to file an amicus brief if requested by the Court. In order to determine whether the Land Use Panel intended to file an amicus brief, the Court extended an invitation to the Land Use Panel to participate in a March 13, 2012 status conference regarding, in part, the Land Use Panel's right to and interest in filing an amicus brief.[3] The Land Use Panel did not participate in that conference and has not filed an amicus brief.

## Discussion

In their motion for summary judgment, Applicants ask the Court to dismiss VNRC and CFGB's appeal, contending that they do not have standing to appeal under 10 V.S.A. § 8504(d). VNRC and CFGB have opposed the motion for summary judgment and have also filed a

---

[3] The Vermont Rules of Environmental Court Proceedings (V.R.E.C.P.) do not address amicus status or rights; however, V.R.E.C.P. 5(a)(2) does inform us that the Vermont Rules of Appellate Procedure (V.R.A.P.) apply to certain proceedings in this Court. Rule 29 of the Vermont Rules of Appellate Procedure empowers the state of Vermont, or an agency thereof, to file amicus briefs without leave of court.

3

motion asking this Court to grant them party status under Act 250 criteria 1(D), 1(F), 9(H), 9(K), and 10. CFGB also requests party status under Act 250 criterion 5.

For the reasons detailed below, we conclude as a matter of law that, under 10 V.S.A. § 8504(d)(2)(B), VNRC and CFGB have standing to appeal the Commission's denial of party status. We also conclude that VNRC and CFGB are entitled to party status on behalf of their members under 10 V.S.A. § 6085(c)(1)(E) as to Act 250 criteria 1(D), 1(F), 9(H), 9(K), and 10. CFGB also is entitled to party status as to Act 250 criterion 5.

## I. **Motion for Summary Judgment**

We may grant summary judgment to a moving party only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3) (2011) (amended Jan. 23, 2012).[4] We will "accept as true the [factual] allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and we will give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

In their motion for summary judgment, Applicants ask this Court to dismiss VNRC and CFGB's appeal, contending that they do not have standing to appeal under 10 V.S.A. § 8504(d)(1) because they did not participate in the Commission proceedings. VNRC and CFGB respond that, as a matter of law, VNRC and CFGB have standing under 10 V.S.A. § 8504(d)(2) to appeal the Commission's denial of party status.

In the Act 250 context, any person aggrieved by an act or decision of a district commission may appeal that act or decision to this Court provided that the person (1) was granted party status by the district commission, (2) participated in the proceedings before the district commission, and (3) retained party status at the end of the district commission proceedings. 10 V.S.A. § 8504(a), (d)(1). A person may "only appeal those issues under the [Act 250] criteria with respect to which the person was granted party status." 10 V.S.A. § 8504(d)(1). Notwithstanding subdivision (d)(1), however, a person may appeal a district commission decision if this Court determines that the person satisfies one of the exceptions listed in 10

---

[4] We note that an updated version of V.R.C.P. 56 took effect on January 23, 2012. However, we analyze the pending motions under the previous version of the rule because that version was in effect at the time the motions were filed. At any rate, the change does not affect our analysis here.

4

V.S.A. § 8504(d)(2), including that the decision being appealed is the district commission's grant or denial of party status.

In their motion for summary judgment, Applicants argue that neither VNRC nor CFGB participated in the proceedings before the Commission, qualified through such participation as parties, or retained party status at the end of the proceedings as required by 10 V.S.A. § 8504(d)(1). Thus, Applicants contend that neither VNRC nor CFGB have standing to appeal the Commission's decision. Specifically, Applicants argue that although the Commission explicitly stated its intention to afford VNRC and CFGB "full participation" as Friends of the Commission, VNRC and CFGB informed the Commission that they would not participate in the proceedings. According to Applicants, VNRC and CFGB's voluntary refusal to participate prevented them from establishing party status and retaining it at the conclusion of the Commission proceedings. As a result, Applicants contend that VNRC and CFGB do not now have standing to appeal the Commission's decision.

In response, VNRC and CFGB admit that they did not participate in the proceedings before the Commission. They contend, however, that it is not 10 V.S.A. § 8504(d)(1) that controls our analysis here, but rather 10 V.S.A. § 8504(d)(2). We agree with VNRC and CFGB.

In its April 1, 2009 decision, the Commission stated that it would "permit VNRC and CFGB, as Friends of the Commission, to engage in full participation in this case, including the ability to present oral and written testimony, cross examine witnesses, file memoranda, and submit proposed findings." In re BLS Bennington LC, Notice of Hearing & Party Status, at 1 (Natural Res. Bd. Dist. 8 Envtl. Comm'n Apr. 1, 2009) (emphasis added). Friends of the Commission status, however, is not the equivalent of party status. In contrast to party status, which is controlled by 10 V.S.A. § 6085(c)(1), Friends of the Commission status is controlled by 10 V.S.A. § 6085(c)(5). That provision, entitled "Friends of the [C]omission," provides that a district commission "may allow nonparties to participate in any of its proceedings, without being accorded party status." The plain language of 10 V.S.A. § 6085(c)(5) therefore clearly indicates that a "Friend of the Commission" is a nonparty. See Payne v. U.S. Airways, Inc., 186 Vt. 458, 463 (2009) (stating that to give effect to legislative intent, "we start with the language of the statute and read it according to its plain and ordinary meaning"); Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986) (stating that if the plain language resolves the conflict, "there is

5

no need to go further, always bearing in mind that the paramount function of the court is to give effect to the legislative intent").

Accordingly, the Commission did not grant VNRC and CFGB party status when it gave them permission to participate as Friends of the Commission. Instead, the Commission effectively denied VNRC and CFGB party status by only permitting them to participate in the proceeding as nonparties. VNRC and CFGB therefore cannot appeal the Commission's decision under 10 V.S.A. § 8504(d)(1) because the Commission did not grant them party status on any of the Act 250 criteria. Thus, because VNRC and CFGB do not satisfy the first requirement of subsection (d)(1), we need not consider whether they "participated" in the Commission proceedings or retained party status at the end of the proceedings.

Our conclusion that VNRC and CFGB do not have standing to appeal the Commission's decision under 10 V.S.A. § 8504(d)(1) does not end our analysis, however. A person aggrieved who does not meet the requirements of § 8504(d)(1) nonetheless has standing to appeal provided one of the three exceptions listed in § 8504(d)(2) is satisfied. Here, VNRC and CFGB argue that they should be granted party status pursuant to § 8504(d)(2)(B), which permits an aggrieved person to appeal a district commission's decision if "the decision being appealed is the grant or denial of party status." 10 V.S.A. § 8504(d)(2)(B). As discussed above, the Commission denied VNRC and CFGB party status when it gave them the limited permission to proceed as Friends of the Commission, or nonparties. We therefore **DENY** Applicants' motion for summary judgment, concluding as a matter of law that, under 10 V.S.A. § 8504(d)(2)(B), VNRC and CFGB have standing to appeal the Commission's denial of party status.

## II. <u>Motion for Party Status</u>

Having determined that VNRC and CFGB have standing to appeal the Commission's denial of party status under 10 V.S.A. § 8504(d)(2)(B), we now consider their motion for party status. VNRC and CFGB request party status under Act 250 criteria 1(D) (floodways), 1(F) (shorelines), 9(H) (scattered development), 9(K) (public investment), and 10 (local or regional plan). CFGB additionally requests party status under criterion 5 (traffic). Applicants have not filed in opposition or otherwise disputed VNRC and CFGB's motion for party status.

The jurisdiction of Vermont state courts, including this Court, is limited to "actual cases or controversies." <u>Parker v. Town of Milton</u>, 169 Vt. 74, 76–77 (1998); see also <u>In re Constitutionality of House Bill 88</u>, 151 Vt. 524, 529 (1949) ("The judicial power, as conferred by

the Constitution of this State upon this Court, is the same as that given to the Federal Supreme Court by the United State Constitution; that is, the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction."). Whether the Court is presented with a case or controversy turns partially on whether the party bringing a claim has standing to do so. Parker, 169 Vt. at 77. In the Act 250 context, party status is a term of art indicating that a party falls within a defined class of persons or entities who can, among other things, secure standing to participate in the district commission proceedings or in an appeal of a district commission determination before the Environmental Division. See 10 V.S.A. §§ 6085(c)(1), 8504(d)(1).

Here, VNRC and CFGB seek party status under 10 V.S.A. § 6085(c)(1)(E). Under Section 6085(c)(1)(E), "[a]ny adjoining property owner or other person who has a particularized interest protected by [Act 250] that may be affected by an act or decision by a district commission" is entitled to party status. This statutory category contains the elements of standing articulated by the United States Supreme Court and adopted by Vermont: that a party show that (1) he or she has or will suffer an injury in fact (one that is concrete, particularized, and actual or imminent); (2) that the defendant caused the plaintiff's injury; and (3) that it is likely that the injury can be redressed by a favorable decision in a court of law. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (articulating the federal standing requirements); Parker, 169 Vt. at 77–78 (adopting the federal standing requirements).

When an organization seeks party status on behalf of its members, the organization must demonstrate that its members are entitled to party status individually. See In re Entergy Nuclear/Vt. Yankee Thermal Discharge Permit Amendment, No. 89-4-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Jan. 9, 2007) (Wright, J.); see also Parker, 169 Vt. at 78. Additionally, the organization must show that "the interests it asserts are germane to the organization's purpose and the claim and relief requested do not require the participation of individual members in the action." Entergy Nuclear, No. 89-4-06 Vtec, slip op. at 7 (quoting Parker, 169 Vt. at 78); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 181 (2000).

As both VNRC and CFGB are organizations seeking party status on behalf of their members, each must meet these three requirements. For ease of analysis, we address the requirements in reverse order.

7

First, the relief requested by VNRC and CFGB does not require the participation of VNRC and CFGB's individual members. VNRC and CFGB request only that the project be denied unless it complies with criteria 1(D), 1(F), 5, 9(H), 9(K), and 10, or its effects are sufficiently mitigated. VNRC and CFGB are fully capable of representing their members' interests in such a proceeding. Moreover, allowing VNRC and CFGB to represent the interests of their members promotes judicial efficiency. See Entergy Nuclear, No. 89-4-06 Vtec, slip op. at 7 ("[F]or the purposes of judicial efficiency, it is helpful to have each organization represent the interests of its individual members, rather than having a potentially large number of those individuals all participating individually.").

Second, the interests VNRC and CFGB assert on behalf of their members are germane to the goals and purposes of the respective organizations. CFGB's goal is to "help the community become aware of the true cost of Big Box Development in Bennington." (Motion for Party Status, Ex. 6, filed Nov. 14, 2011.) The organization consists of "concerned citizens who volunteer their time to make Bennington a great place to live and work." Id. Here, CFGB members assert an interest in ensuring that the proposed project—an expanded Wal-Mart—does not result in adverse impacts to the Town under Act 250 criteria 1(D), 1(F), 5, 9(K), 9(H), and 10. These interests are germane to CFGB's goal—protecting the Town from the alleged adverse effect of "Big Box Development."

VNRC is a statewide conservation organization that seeks to promote the preservation and conservation of Vermont's natural resources and educate the public on conservation issues. (Motion for Party Status, Ex. 7, filed Nov. 14, 2011.) To further this purpose, VNRC advocates "before federal, state, regional, or local government bodies." Id. Here, VNRC members assert interests in conserving and protecting the Walloomsac River under criteria 1(D) and 1(F), protecting the fiscal viability of the Town and ensuring a sustainable community under criteria 9(H) and 9(K), and ensuring that the proposed project complies with the Town Plan under criterion 10. These interests directly relate to VNRC's mission of preserving and conserving Vermont's natural resources.

The "germaneness" requirement is flexible; the members' interests are "not required to exactly mirror the organizational purpose." Entergy Nuclear, No. 89-4-06 Vtec, slip op. at 7. Accordingly, the interests that VNRC and CFGB's members assert are germane to each respective organization's purposes and goals.

8

Having determined that VNRC and CFGB satisfy the second and third requirements for organizational party status, we turn our attention to an analysis of the first requirement: whether the organizations' members are individually entitled to party status. To complete this analysis, we must engage in an examination of whether the organizations' members fit within the category of people described in 10 V.S.A. § 6085(c)(1)(E), the category under which VNRC and CFGB request party status on behalf of their members. Under Section 6085(c)(1)(E), "[a]ny adjoining property owner or other person who has a particularized interest protected by [Act 250] that may be affected by an act or decision by a district commission" is entitled to party status.

As discussed above, this statutory provision contains the elements of standing adopted in Parker. That is, to determine whether the injuries VNRC and CFGB's members allege are based on a "particularized interest protected by" Act 250, the Court asks whether the injuries are to a "specified interest protected by Act 250 that is particular to [them], not a general policy concern shared by the general public." In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jul. 2, 2010) (Durkin, J.); see also Granville, No. 2-1-11 Vtec, slip op. at 6; In re Champlain Marina, Inc., Dock Expansion, No. 28-2-09 Vtec, slip op. at 5–7 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.); Lujan, 504 U.S. at 560 (indicating that a plaintiff must allege a "concrete and particularized" injury to have standing).

Second, to show that their members' alleged injuries "may be affected by an act or decision by a district commission," VNRC and CFGB are not required to prove that a decision regarding the proposed project "will affect their [members'] particularized interests, or that they will prevail at a merits hearing." Pion, No. 245-12-09 Vtec, slip op. at 7. Instead, "they need only demonstrate that the project may affect their [members'] interests." Id; see also Granville, No. 2-1-11 Vtec, slip op. at 6 ("Appellant must also provide an offer of proof that shows how the particularized interests he alleges may be affected by the issuance of the state land use permit . . . .") (emphasis added); Lujan, 504 U.S. at 560 (indicating that a plaintiff must allege an "actual or imminent, not conjectural or hypothetical" injury to have standing and show a "causal connection between the injury and the conduct complained of" (citations omitted)). While this "offer of proof" must be "more than mere speculation and theory," Pion, No. 245-12-09 Vtec, slip op. at 7, to obtain party status under 10 V.S.A. § 6085(c)(1)(E), VNRC and CFGB need only show that there is a reasonable possibility that their members' particularized interests may be

9

affected by a decision on the proposed project. See Granville, No. 2-1-11 Vtec, slip op. at 6 (stating that a party need only "refer to evidence that demonstrates a non-speculative causal connection between the proposed project and [his or her] particularized interests").[5]

With the above requirements in mind, we analyze the potential impacts that granting an Act 250 permit for the proposed project will have on VNRC and CFGB's members' particularized interests in order to determine whether the organizations are entitled to party status on behalf of their members under criteria 1(D), 1(F), 9(H), 9(K), 10, and, in CFGB's case, criterion 5 as well.

### A. Criteria 1(D) and 1(F)

Criterion 1(D) requires that

(i) [a] development . . . within a floodway will not restrict or divert the flow of flood waters, [or] endanger the health, safety and welfare of the public or of riparian owners during flooding; and (ii) [a] development . . . within a floodway fringe will not significantly increase the peak discharge of the river or stream within or downstream from the area of development and endanger the health, safety, or welfare of the public or riparian owners during flooding.

10 V.S.A. § 6086(a)(1)(D). Criterion 1(F) requires that the development of shorelines

must of necessity be located on a shoreline in order to fulfill the purpose of the development . . . and the development will, insofar as possible and reasonable in light of its purpose: (i) retain the shoreline and the waters in their natural condition; (ii) allow continued access to the waters and the recreational opportunities provided by the waters; (iii) retain or provide vegetation which will screen the development or subdivision from the waters; and (iv) stabilize the bank from erosion, as necessary, with vegetation cover.

10 V.S.A. § 6086(a)(1)(F).

VNRC and CFGB argue that their members have a particularized interest under criteria 1(D) and 1(F) that would be affected by the proposed project. In support of their argument, both VNRC and CFGB have submitted affidavits from several of their members in which the members allege that they use the nearby Walloomsac River for recreational purposes and wildlife viewing. (Motion for Party Status, Ex. 1, filed Nov. 14, 2011.) At least one member of

---

[5] This Court's Decision on the Neighbors' Motion for Party Status in Pion initially set forth the same legal standard for obtaining Act 250 party status that we employ here. It appears, however, that in its application of that legal standard to the facts before it, the Court in Pion required a heightened evidentiary standard, more akin to a merits review, than that which is required when considering a preliminary motion for party status. To the extent there is any truth to this impression, the Court today clarifies that the standard for obtaining party status under Act 250 is a showing of a reasonable possibility that a decision on the proposed project may affect a person's particularized interest.

VNRC and one member of CFGB are avid kayakers on the river, while other members of both VNRC and CFGB allege that they use the river by walking, cycling, and running nearby or by wading, swimming, or fishing in the river. Several members also allege that they use the river for bird watching. Many of the members enjoy the covered bridges along the river and the peace and serenity of the river. All members are concerned that the project will affect the flood plain, resulting in erosion and sediment that could degrade the quality of the water and affect their use and enjoyment of the river.

"'While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice.'" Champlain Marina, No. 28-2-09 Vtec, slip op. at 6 (quoting Summers v. Earth Island Inst., 55 U.S. 488, 494 (2009)); see also Lujan, 504 U.S. at 562-63 ("The desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing."); Entergy Nuclear, No. 89-4-06 Vtec, slip op. at 8-9 (finding that allegations that a permit amendment would adversely affect fishing, boating, birdwatching, and ecological activities were sufficiently specific "to establish threat of injury to individuals' particularized interests"); Appeal of Rivers Dev., LLC, Nos. 7-1-05 Vtec & 68-3-07 Vtec, slip op. at 6 (Vt. Envtl. Ct. Jul. 3, 2007) (Durkin, J.) (granting party status under criterion 1(F) because the parties used the river in front of their home for recreation). Thus, VNRC and CFGB have sufficiently shown that their members have a particularized interest under criteria 1(D) and 1(F).

Moreover, VNRC and CFGB submitted an affidavit from VNRC's Water Program Director and Staff Scientist, Kim Greenwood. (Motion for Party Status, Ex. 2, filed Nov. 14, 2011.) Ms. Greenwood alleges that, with respect to criterion 1(D) (floodways), the project could contribute to erosion of downstream riverbanks, which could disrupt wildlife habitat along the river and cause changes to the river channel and banks that would interfere with kayaking, canoeing, and recreational opportunities along the river. With respect to criterion 1(F) (shorelines), Ms. Greenwood alleges that the proposed project would eliminate the vegetative buffer that currently exists between the existing site and the river, which could disrupt wildlife habitat and result in additional runoff and sediment entering the Walloomsac River.

Our review of this evidence indicates that VNRC and CFGB have sufficiently alleged a reasonable possibility of injury to their members' particularized interests protected under

11

criteria 1(D) and 1(F). The affidavits presented by VNRC and CFGB indicate that their members personally use the Walloomsac River for recreational and aesthetic purposes. Moreover, VNRC and CFGB's members' alleged injury may be affected by a decision granting the Act 250 permit because erosion, increased sediment, and the elimination of the vegetative buffer could affect the members' ability to recreate and enjoy the river. Accordingly, VNRC and CFGB are entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criteria 1(D) and 1(F).

### B. Criterion 5

CFGB, but not VNRC, seeks party status on criterion 5. Criterion 5 requires that a project "will not cause unreasonable congestion or unsafe conditions with respect to use of highways, waterways, railways, airports and airways, and other means of transportation existing or proposed." 10 V.S.A. § 6086(a)(5). In determining party status with respect to criterion 5, "'the relevant inquiry is whether the petitioner uses the roads that may be impacted by a project on a regular basis.'" Pion, No. 245-12-09 Vtec, slip op. at 14 (quoting In re Pike Indus., Inc., No. 5R1415-EB, Mem. of decision, at 2 (Vt. Envtl. Bd. Nov. 19, 2004)); see also Rivers, Nos. 7-1-05 Vtec & 68-3-07 Vtec, slip op. at 3-4 (granting party status to a party when he resided on a road where trucks would pass and to parties who biked and walked along the subject road).

CFGB contends that its members have a particularized interest under criterion 5 that would be affected by the proposed project. CFGB has presented affidavits indicating that its members use Northside Drive on a regular basis; most members use it at least several times per week. (Motion for Party Status, Ex. 1, filed Nov. 14, 2011.) The affidavits also indicate that the project will affect the members' interests in the form of increased traffic delays and express some members' concerns with traffic safety. At least one CFGB member expressed concern that, as an avid bicyclist, increased traffic on connecting side roads would affect her use and enjoyment of those roads.

CFGB has also submitted an affidavit from Michael Oman, a transportation planner. (Motion for Party Status, Ex. 3, filed Nov. 14, 2011.) According to the affidavit, Mr. Oman has reviewed traffic studies related to the proposed project and would testify as to the project's effect on criterion 5. Among other things, Mr. Oman raised the possibility of the project's impact on pedestrian and bicycle access and safety and questioned the effectiveness of the steps

12

proposed to mitigate such impacts. He also expressed the potential for an increase in automobile accidents near the project site and the possibility of longer delays.

In light of this evidence, CFGB has sufficiently alleged a reasonable possibility of injury to its members' particularized interests protected under criterion 5. Its members regularly use the roads that will be affected by the project. Moreover, CFGB's members' alleged injury may be affected by a decision granting the Act 250 permit because an increase in traffic created by the project could result in delays and safety issues. Accordingly, CFGB is entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criterion 5.

## C. Criterion 9(H)

Criterion 9(H) permits a district commission to grant an Act 250 permit for a development

> which is not physically contiguous to an existing settlement whenever it is demonstrated that . . . the additional costs of public services and facilities caused directly or indirectly by the proposed development . . . do not outweigh the tax revenue and other public benefits of the development . . . such as increased employment opportunities or the provision of needed and balanced housing accessible to existing or planned employment centers.

10 V.S.A. § 6086(a)(9)(H). In other words, under criterion 9(H), the Commission may issue a permit for scattered development as long as the public costs of the project do not outweigh its public benefits. See In re Green Meadows Ctr., LLC, No. 2W0694-1-EB, Findings of Fact, Conclusions of Law and Order, at 41 (Vt. Envtl. Bd. Dec. 21, 2000). Regional and local impacts such as significant job losses and shifts in retail sales away from existing businesses, which "reduc[e] government tax revenues and negatively affect[] the ability of governments to provide services, accommodate growth, and maintain public investments and facilities," are cognizable under criterion 9(H). In re St. Albans Group & Wal-Mart Stores, Inc., No. 6F0471-EB, Mem. of Decision, at 5 (Vt. Envtl. Bd. Apr. 15, 1994). Criterion 9(H) is intended "to discourage scattered development beyond the boundaries of community centers if such development will damage the ability of the communities to maintain themselves." In re St. Albans Group & Wal-Mart Stores, Inc., No. 6F0471-EB, Findings of Fact, Conclusions of Law, and Order (Altered), at 43 (Vt. Envtl. Bd. Jun. 27, 1995).

VNRC and CFGB contend that their members have particularized interests under criterion 9(H) that would be affected by the proposed project. Both VNRC and CFGB have submitted affidavits from their members indicating that the proposed project will likely cause

13

significant job losses and shifts in retail sales away from their existing downtown businesses. (Motion for Party Status, Ex. 1, filed Nov. 14, 2011.) The affidavits indicate that many of the organizations' members are downtown business owners who are concerned that their businesses will lose significant revenue as a result of the project and that the character of the downtown will significantly change. VNRC and CFGB also submitted a report, entitled "Regional Economic Impact Analysis Associated with Proposed Wal-Mart Expansion in Bennington, Vermont (2007)," which estimated that the proposed project could affect as much as 10-15% of the Town's downtown retail business. (Motion for Party Status, Ex. 5, filed Nov. 14, 2011.) The organizations' members who own downtown businesses expressed in their affidavits the fear that their businesses would be part of that 10-15%.

Moreover, VNRC and CFGB argue that scattered development could impact their members who own downtown businesses by affecting the tax revenue available for the downtown area. John Shanahan, Executive Director of the Better Bennington Corporation, explained in an affidavit that downtown businesses benefit from a special tax (the District Tax) which generates revenue for downtown economic development, marketing, and promotion and ensures the continued economic vitality of the Town. (Affidavit of John Shanahan, Motion for Party Status, Ex. 1, filed Nov. 14, 2011.) VNRC and CFGB members expressed concern that the project will result in a loss of downtown business, which will lead to less income being generated from the District Tax and fewer funds available to maintain the Town's downtown area.

Our review of this evidence indicates that VNRC and CFGB have alleged a reasonable possibility of injury to their members' particularized interests that is protected under criterion 9(H). The members have alleged a potential injury to their businesses by the possible shift in retail sales away from the downtown area, thus resulting in a decrease in business and tax revenue. Moreover, VNRC and CFGB's members' alleged injury may be affected by a decision granting the Act 250 permit because any shift in retail sales from the members' businesses to the Wal-Mart could result in a loss of business and tax revenue. Accordingly, VNRC and CFGB are entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criterion 9(H).

**D. Criterion 9(K)**

Criterion 9(K) allows an Act 250 permit to be granted for development

adjacent to governmental and public utility facilities, services, and lands . . . when it is demonstrated that . . . the development . . . will not unnecessarily or

14

unreasonably endanger the public or quasi-public investment in the facility, service, or lands, or materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to the facility, service, or lands.

10 V.S.A. § 6086(a)(9)(K). This criterion "seeks to protect state and local governments from adverse fiscal impacts on public facilities and investments that are adjacent to the proposed project." St. Albans Group, No. 6F0471-EB, Mem. of Decision, at 9. That is, like the other fiscal criteria including criterion 9(H), the purpose of criterion 9(K) is to protect government finances from burdens imposed by the new development. St. Albans Group, No. 6F0471-EB, Findings of Fact, Conclusions of Law, and Order, at 30.

First, CFGB argues that its members have a particularized interest protected under criterion 9(K) in relation to a proposed roundabout at the entrance of the proposed project. Although the plans for the project provide that Applicants will pay to construct the roundabout, CFGB has submitted numerous affidavits from its members stating their concern that the project will eventually result in increased taxes as the Town is required to fund further improvements or modifications to the roundabout. (Motion for Party Status, Ex. 1, filed Nov. 14, 2011). Specifically, many of CFGB's members are concerned that the project will adversely affect public investment in Northside Drive and the surrounding streets, particularly if the roundabout must eventually be expanded from one lane to two to accommodate an increase in traffic. Moreover, one CFGB member expressed concern about constructing the roundabout over old water and sewer lines that will eventually need to be replaced, resulting in repair and reconstruction of the roundabout at the public's expense.

VNRC and CFGB also contend that their members have a particularized interest protected under criterion 9(K) in relation to the impacts on public investment that may impose additional fiscal burdens on the Town. As discussed above with regard to criterion 9(H), regional and local impacts such as significant job losses and shifts in retail sales away from existing businesses, which "reduc[e] government tax revenues and negatively affect[] the ability of governments to provide services, accommodate growth, and maintain public investments and facilities," are also cognizable under criterion 9(K). St. Albans Group, No. 6F0471-EB, Mem. of Decision, at 5. Accordingly, the same evidence that supports a particularized impact under criterion 9(H)—that the project could adversely affect VNRC and CFGB's members' downtown businesses by resulting in a direct loss of business and by reducing the amount of tax revenue

15

generated in the downtown area—also supports a conclusion that the members of VNRC and CFGB have alleged a particularized interest that is protected under criterion 9(K).

Furthermore, VNRC and CFGB's members' alleged injury may be affected by a decision granting the Act 250 permit because the construction of the roundabout could result in an increased burden on taxpayers and, as discussed above, any shift in retail sales from the members' businesses to the Wal-Mart could result in the members' loss of business and tax revenue. Accordingly, VNRC and CFGB are entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criterion 9(K).

### E. Criterion 10

Criterion 10 requires that a development be in conformance with "any duly adopted local or regional plan." 10 V.S.A. § 6086(a)(10). "Every resident of the town has a particularized interest under criterion 10 to ensure that a project complies with their town plan." Pion, No. 245-12-09 Vtec, slip op. at 17. VNRC and CFGB have submitted affidavits from their members indicating that the great majority live in the Town of Bennington and are therefore residents with a particularized interest under criterion 10. (Motion for Party Status, Ex. 1, filed Nov. 14, 2011.)

Moreover, VNRC and CFGB have submitted an affidavit from Brian Shupe, a professional planner, which discusses the potential noncompliance of the proposed project with the Town Plan. (Motion for Party Status, Ex. 4, filed November 14, 2011.) According to Mr. Shupe, the Town Plan describes the downtown area as the "historic heart of the community" and requires that the "character and vitality" of that area be retained.[6] Id. The Town Plan also provides that, because the downtown area "will remain the commercial, civic, cultural, and residential heart of the community," the Town must pursue actions which will "allow this area to prosper." Id. According to Mr. Shupe, the proposed development will not comply with these provisions of the Town Plan. Mr. Shupe also alleges that the proposed project will fail to comply with numerous other provisions of the Town Plan, including those that require "special studies" for new stores larger than 50,000 square feet and those that relate to development in the Planned Commercial District, the district in which the proposed project will be located.

---

[6] The parties have not submitted a copy of the Town Plan to this Court. We therefore rely on the excerpts from the Town Plan found in Mr. Shupe's affidavit, Exhibit 4 of VNRC and CFGB's motion for party status.

16

Our review of this evidence indicates that VNRC and CFGB have alleged a reasonable possibility of injury to their members' particularized interest that is protected under criterion 10. VNRC and CFGB members are residents of the Town, and VNRC and CFGB have introduced an affidavit indicating that the proposed project may not comply with the Town Plan. Moreover, VNRC and CFGB's members' alleged injury may be affected by a decision granting the Act 250 permit because the construction of the proposed project could result in noncompliance with the Town Plan. Accordingly, VNRC and CFGB are entitled to party status under 10 V.S.A. § 6085(c)(1)(E) with respect to criterion 10.

**F. Conclusion**

VNRC and CFGB have alleged a reasonable possibility of an injury to their members' particularized interests under Act 250 criteria 1(D), 1(F), 9(H), 9(K), and 10 as required by 10 V.S.A. § 6085(c)(1)(E). CFGB has also alleged a reasonable possibility of an injury to its members' particularized interests under criterion 5. The Court's decision to grant or deny an Act 250 permit for the proposed project may affect these particularized interests. Thus, VNRC and CRFB have shown that they satisfy the first requirement for organizational party status under each of the criteria for which they request party status on behalf of their members.

Because we have concluded above that VNRC and CFBG have also shown that they satisfy the second and third requirements for organizational party status, we ultimately conclude that they are entitled to party status on behalf of their members for each of these criteria. Accordingly, we **GRANT** VNRC and CFGB's motion for party status on criteria 1(D), 1(F), 9(H), 9(K), and 10. We also **GRANT** CFGB's motion for party status on criterion 5.

**III. Remand Unnecessary**

In their Statement of Questions, VNRC and CFGB ask whether, if this Court determines that they are entitled to party status, the matter should be remanded to the Commission. It is within this Court's discretion to determine whether remand is appropriate. See In re JLD Props. – Wal-Mart St. Albans, Nos. 242-10-06 92-5-07 and 116-6-08 Vtec, slip op. at 17 (Vt. Envtl. Ct. Mar. 16, 2009) (Durkin, J.); In re Maple Tree Place, 156 Vt. 494, 498–501 (1991). Because remanding this matter to the Commission would result in inefficiency in the permitting process, remand is unnecessary here. This Court can appropriately consider Applicants' application's compliance with the Act 250 criteria on appeal without remand to the Commission. See In re Torres, 154 Vt. 233, 235 ("The reach of the superior court in zoning appeals is as broad as the

powers of a zoning board of adjustment or a planning commission, but it is not broader . . . . [W]hatever the zoning board of adjustment or the planning commission might have done with an application properly before it, the superior court may also do if an appeal is duly perfected.").

## IV.    Interlocutory Appeal

Applicants contend that neither VNRC nor CFGB are entitled to party status under V.R.E.C.P. 5(d)(2) because they sought interlocutory relief pursuant to V.R.E.C.P. 5(d)(1) from the Commission's March 12, 2009 denial of party status.  VNRC and CFGB respond that the Vermont Rules for Environmental Court Proceedings provide persons denied party status an opportunity to file an interlocutory appeal, but that, if interlocutory relief is not granted, nothing prohibits an appeal of the denial of party status at the conclusion of the Commission proceedings.

Pursuant to V.R.E.C.P. 5(d)(1), any party denied party status in a proceeding before a district commission <u>may</u> ask this Court for an interlocutory appeal of the district commission's decision denying party status under 10 V.S.A. § 6085.  The court "<u>may</u> grant the motion and hear the appeal if it determines that review will materially advance the application process before the district commission."  <u>Id</u>. (emphasis added).    Pursuant to V.R.E.C.P. 5(d)(2),  "[a]n appellant who claims party status under 10 V.S.A. § 8504 . . . (d)(2) . . . and who has not sought interlocutory relief pursuant to [V.R.E.C.P. 5(d)(1)] must assert that claim by motion filed not later than the deadline for filing a statement of questions on appeal."  V.R.E.C.P. 5(d)(2).

Here, VNRC and CFGB filed an interlocutory appeal of the Commission's March 12, 2009 Prehearing Conference Report and Order declining to grant them party status.  This Court denied the motion for interlocutory relief.  Applicants now appear to argue that subsection (d)(2) prevents VNRC and CFGB from appealing the Commission's final denial of party status because they sought interlocutory relief of the Commission's March 12, 2009 Prehearing Conference Report and Order.  In response, VNRC and CFGB argue that subsection (d)(2) is merely a procedural requirement and does not prevent a person who has previously sought interlocutory review from subsequently appealing a final decision by a district commission denying party status.

We agree with VNRC and CFGB.  Were we to adopt Applicants' interpretation of subsection (d)(2), a person or entity might feel compelled to forego the opportunity to ask this

18

Court for an interlocutory appeal in order to preserve his or her right to appeal the district commission's final determination of party status. Subsection (d)(2) merely specifies the deadline under which a person or entity must file a motion for party status with this Court. Nothing in subsection (d)(2) prevents a person or entity who has already sought interlocutory review, and whose request for interlocutory review was denied, from filing another motion for party status with his or her appeal from the district commission's final decision. Any other interpretation of the Rule would lead to an absurd result. See In re Ambassador Ins. Co., Inc., 2008 VT 105, ¶ 18, 184 Vt. 408 ("[W]e favor interpretations of statutes that further fair, rational consequences, and we presume that the Legislature does not intend an interpretation that would lead to absurd or irrational consequences.") (quoting Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287 (quotations omitted)).

Here, VNRC and CFGB filed an interlocutory appeal of the Commission's March 12, 2009 Prehearing Conference Report and Order with this Court. This Court declined to consider the interlocutory appeal and instead remanded the matter to the Commission. It is the Commission's final decision denying party status that VNRC and CFGB now appeal. We conclude that, where this Court declined to consider VNRC and CFGB's interlocutory appeal, VNRC and CFGB may appeal the Commission's final decision denying party status to this Court.

## Conclusion

For the reasons detailed above, we **DENY** Applicants' motion to dismiss, converted by this Court to a motion for summary judgment, concluding as a matter of law that VNRC and CFGB have standing to appeal the Commission's denial of party status under 10 V.S.A. § 8504(d)(2)(B).[7] We also **GRANT** VNRC and CFGB's motion for party status, concluding that VNRC and CFGB are entitled to party status on behalf of their members under Act 250 criteria 1(D), 1(F), 9(H), 9(K), and 10. CFGB is also entitled to party status under Act 250 criterion 5.

---

[7] Because we deny Applicants' motion to dismiss, converted to a motion for summary judgment, we do not address VNRC and CFGB's argument that judicial estoppel bars Applicants' motion or the arguments contained therein.

The Court will set this matter for status conference to address whether this matter is trial ready.

Done at Berlin, Vermont this 24th day of April, 2012.

 

 

 

Thomas G. Walsh,
Environmental Judge